IN THE COURT OF APPEALS OF THE STATE OF IDAHO
Docket No. 36405

| MICHAEL C. McCOY, | ) | 2010 Unpublished Opinion No. 567 |
|---|---|---|
| | ) | |
| Petitioner-Appellant, | ) | Filed: July 28, 2010 |
| | ) | |
| v. | ) | Stephen W. Kenyon, Clerk |
| | ) | |
| STATE OF IDAHO, | ) | THIS IS AN UNPUBLISHED |
| | ) | OPINION AND SHALL NOT |
| Respondent. | ) | BE CITED AS AUTHORITY |
| | ) | |

Appeal from the District Court of the Sixth Judicial District, State of Idaho, Bannock County. Hon. David C. Nye, District Judge.

Order summarily dismissing a successive application for post-conviction relief, affirmed.

Michael C. McCoy, Boise, pro se appellant.

Hon. Lawrence G. Wasden, Attorney General; Elizabeth A. Koeckeritz, Deputy Attorney General, Boise, for respondent.

_____

GRATTON, Judge

Michael C. McCoy appeals the summary dismissal of his successive post-conviction application. We affirm.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

In *McCoy v. State*, 129 Idaho 70, 71-72, 921 P.2d 1194, 1195-96 (1996), the Court set out the background to this case:

Appellant Michael C. McCoy (McCoy) and his co-defendant, Danny Gillette (Gillette) were originally charged with one count of Grand Theft, one count of Kidnapping and one count of Robbery. These charges arose out of the abduction of a car salesman in Pocatello, [Rainey], under the pretense that McCoy and Gillette wanted to test drive a car available for sale at the dealership where Rainey worked. After getting in the car, Gillette and/or McCoy pulled a gun or guns on Rainey and forced him to drive with them to the Malad area. Gillette and McCoy then robbed Rainey, tied him up with duct tape, left him in a rural part of

1

Oneida County, and drove off with the stolen car. They were later arrested in Utah and extradited to Idaho.

John Souza (Souza) of the Bannock County public defender's office was appointed to represent McCoy, while Randall Schulthies (Schulthies), an attorney on contract with the public defender's office to handle conflict cases, was assigned to represent Gillette. Identical plea agreements were reached by both McCoy and Gillette whereby they agreed to plead guilty to the crime of robbery in exchange for a dismissal of the remaining charges. Presentence reports were ordered for both defendants.

Gillette's sentencing hearing was scheduled for Monday, July 1, 1991. At the time of sentencing, Gillette's attorney, Schulthies, was unavailable and requested that Souza appear with Gillette. Evidence at Gillette's sentencing hearing indicated that he had numerous prior felony convictions. Gillette was sentenced to a term of seven years determinate followed by an indeterminate term of life imprisonment.

McCoy's sentencing took place the following day, July 2, 1991. Souza continued to represent McCoy at the sentencing, although he had represented Gillette at his sentencing. The presentence report indicated that McCoy had continual and ongoing involvement in the criminal justice system, but had only one prior felony conviction. The prosecutor recommended a fixed sentence of 20 years followed by an indeterminate life sentence. The district court sentenced McCoy to a determinate term of eight years and an indeterminate term of life imprisonment.

McCoy and Gillette filed I.C.R. 35 motions for reduction of their sentences which the district court denied. Souza represented both McCoy and Gillette at these hearings. McCoy and Gillette then appealed from the imposition of their sentences and from the denial of their Rule 35 motions. Souza filed appellate briefs with the Supreme Court on behalf of both McCoy and Gillette. The Court of Appeals affirmed the district court's exercise of discretion in sentencing McCoy and Gillette and affirmed the denial of their Rule 35 requests for leniency. *See State v. McCoy,* 121 Idaho 631, 826 P.2d 1343 (Ct. App. 1992) and *State v. Gillette,* 121 Idaho 629, 826 P.2d 1341 (Ct. App. 1992).

Thereafter, McCoy filed a petition for post-conviction relief. McCoy alleged, *inter alia,* that he was denied his state and federal constitutional right to independent counsel because his attorney, Souza, also represented Gillette at his sentencing hearing. McCoy claimed that Souza's representation of Gillette was a clear conflict of interest in that there were claims that McCoy was more culpable than Gillette. After an evidentiary hearing, at which McCoy testified, the district court issued its findings of fact, conclusions of law and order denying McCoy's petition.

Subsequently, a public reprimand was issued by the Idaho State Bar against Souza which appeared in the April 1995 issue of *The Advocate.* The reprimand stated that Souza's representation of McCoy and Gillette was a conflict of interest.

(Footnote omitted.)

The Court affirmed the district court's denial of McCoy's application for post-conviction relief. In doing so, the Court held that McCoy had failed to demonstrate an actual conflict of interest regarding Souza's representation of both Gillette and McCoy at their respective sentencing hearings, despite the fact that McCoy had been painted as more culpable in the crime by Gillette, and the fact that Souza had later been publicly reprimanded by the Idaho State Bar for his multiple representation. *McCoy*, 129 Idaho at 74-75, 921 P.2d at 1198-1199. The Court further held that it would not entertain McCoy's claim of conflict of counsel relative to the Rule 35 hearings and the direct appeal because he had not raised the issues in his application stating, however, that "it is clear from the record that there is no reason McCoy could not have included these issues in his petition." *Id.* at 73-74, 921 P.2d at 1197-98. Finally, the Court held that McCoy had not preserved any claim that the district court had failed in its duty to inquire into the alleged conflict of interest, and that the district court had applied the proper standard to McCoy's ineffective assistance of counsel claims. *Id.* at 75-76, 921 P.2d at 1199-2000.

On October 27, 2008, McCoy filed the instant matter. The verified pleading filed by McCoy is entitled "Defendant's Motion for Leave to File a Successive Application for Post-Conviction Relief." On November 6, 2008, McCoy filed a pleading entitled "Equitable Estoppel Claim in Support of Defendant's Motion for Leave to File a Successive Application for Post-Conviction Relief." The State filed the "State's Assertion of Bar to Successive Post-Conviction Petition" contending that sufficient reason to file a successive application under I.C. § 19-4908 had not been shown and requested dismissal or denial. McCoy filed a request that the district court take judicial notice of certain documents and a request for default judgment. Thereafter, the district court, in denying the motion, dismissed the successive application. McCoy appeals.

## II.

## DISCUSSION

McCoy's present claims are again based upon ineffective assistance of counsel. The essence of his claim is that Souza's conflict, by virtue of his representation of McCoy and Gillette, rendered his assistance ineffective. McCoy further claims that, unbeknownst to McCoy, an associate in Souza's office prepared certain of the pleadings, including the appellate brief on direct appeal, and did not address the conflict issues. McCoy claims that he should be allowed to proceed with a successive petition because of newly discovered evidence. He claims that he became aware of certain information for the first time in July 2008 when documents were given

3

to him by Gillette. Among these documents are a letter from Souza to Bar Counsel dated April 15, 1994, which he contends demonstrates that an associate in Souza's office prepared some of the pleadings. The documents, which he argues further substantiate his claim of conflict of interest by Souza, include a supplemental report of Detective Schei, a copy of Gillette's presentence investigation report (PSI), the transcript of Gillette's Rule 35 hearing, and a letter from Gillette's original conflict counsel, Randall Schulthies, to Souza dated February 1994. McCoy asserts that these documents provide sufficient reason, under I.C. § 19-4908, to proceed with a successive application.

In this appeal, McCoy contends the district court erred in: (1) failing to grant default judgment against the State; (2) failing to take judicial notice of requested evidence; (3) failing to provide notice of the grounds for dismissing the application; and (4) dismissing the application.[1] We will address each in turn.

## A.      Request for Default Judgment Against the State

McCoy argues the district court was required to enter a default judgment against the State because it did not respond within thirty days as required by I.C. § 19-4906(a). In proceedings for post-conviction relief, the Idaho Rules of Civil Procedure apply, and I.R.C.P 55 governs the entry of default judgment. *Johnson v. State*, 112 Idaho 1112, 1114, 739 P.2d 411, 413 (Ct. App. 1987). The grant or denial of a default judgment rests within the discretion of the trial court. *Id*. Idaho Rule of Civil Procedure 55(a)(1) allows the court to enter a default judgment when a party has failed to plead or defend itself. Rule 55(a)(1) also prohibits the entry of default judgment against a party that has appeared in the action unless the party has been served with three days written notice of the application for entry of such default. Defendants in civil actions may file untimely answers so long as they have not been precluded by an intervening proper order of default. *Griffin v. State*, 142 Idaho 438, 442, 128 P.3d 975, 979 (Ct. App. 2006). Idaho Rule of Civil Procedure 55(e) states: "No judgment by default shall be entered against the state of Idaho, an officer, agency or political subdivision thereof, unless the claimant establishes the claimant's claim or right by evidence satisfactory to the court." This apparently requires the district court to

---

[1]      Additionally, the application and the equitable estoppel pleading devote considerable time to the assertion that the post-conviction court committed judicial misconduct as a separate claim for relief and as sufficient reason to file a successive petition. These allegations are not raised as a basis for error in this appeal and, therefore, they will not be considered.

consider the substance of the claims and only enter a default judgment against the State if the action has merit. *Johnson*, 112 Idaho at 1115, n.3, 739 P.2d at 414, n.3.

McCoy filed his motion for leave to file a successive application on October 27, 2008. On January 28, 2009, before any order of default was entered, the State responded with its motion for summary dismissal. McCoy did not request that the court enter a default judgment until February 9, 2009. On April 3, 2009, the district court summarily dismissed McCoy's successive application. McCoy has failed to show the district court erred by not entering default judgment.

**B.     Judicial Notice**

McCoy argues the district court erred in failing to take judicial notice of the documents under I.R.E. 201. A court's decision to take judicial notice of an adjudicative fact is a determination that is evidentiary in nature and is governed by the Idaho Rules of Evidence. *See* I.R.E. 201. We review lower court decisions admitting or excluding evidence under the abuse of discretion standard. *Dachlet v. State*, 136 Idaho 752, 755, 40 P.3d 110, 113 (2002). In reviewing a trial court's exercise of discretion we consider whether the trial court: (1) correctly perceived the issue as one of discretion; (2) acted within the boundaries of such discretion and consistently with applicable legal standards; and (3) reached its decision by an exercise of reason. *Id*. at 756, 40 P.3d at 114.

Idaho Rule of Evidence 201(b) provides that "a judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Under I.R.E. 201(d) a court must take judicial notice of records, exhibits, or transcripts from the court file in the same or a separate case if requested by a party and supplied with the necessary information. To provide the necessary information, "the party shall identify the specific documents or items for which the judicial notice is requested or shall proffer to the court and serve on all [parties] copies of such documents or items." I.R.E. 201(d). Otherwise, under I.R.E. 201(c) a district court may without a request take judicial notice of its own record in the case before it. *Larson v. State*, 91 Idaho 908, 909, 435 P.2d 248, 249 (1967).

McCoy requested that the district court take judicial notice of: (1) Detective Schei's investigative report; (2) Detective Hickman's affidavit of probable cause; (3) his own PSI report;

5

(4) Idaho State Bar File FC-94-003 for the disciplinary action against Souza; and (5) Gillette's PSI. McCoy argues that the court failed to take judicial notice of any of these documents.

In its order, the district court stated: "The Court has reviewed the Successive Petition, the Equitable Estoppel Claim, the Assertion of Bar, the prior record in this matter, and the record in *State v. McCoy*, Case No. C-5377-B." The supplemental report from Detective Schei and the affidavit of probable cause from Detective Hickman are both present in the record for Case No. C-5377-B, the underlying criminal case. And his PSI would have been an exhibit to that record. Thus, contrary to McCoy's assertion, the district court took judicial notice of McCoy's PSI and the reports from Detectives Schei and Hickman.

There is no indication that the district court took judicial notice of the Idaho State Bar file or Gillette's PSI. In *Newman v. State*, __ Idaho __, __, __ P.3d __, __ (Ct. App. Jan. 29, 2010), this Court recently held that a district court did not abuse its discretion in refusing to take judicial notice of a Bar file in a disciplinary action, stating:

> Documents maintained by the state bar are not "generally known within the territorial jurisdiction of the trial court" under I.R.E. 201(b)(1), nor are they "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned" under I.R.E. 201(b)(2) because a court does not have access to those documents. Unlike court records, local laws, ordinances, and other facts that are easily accessible and available to the trial court (facts for which judicial notice is plainly contemplated by I.R.E. 201(c) and (d)), bar misconduct records are not readily available to the trial court. . . .

*Id*. Similarly, McCoy did not demonstrate that the Bar documents were accessible to the district court, and, except for attaching the letter from Souza to Bar Counsel, he did not identify the specific documents in the Bar file that he was requesting the court accept as evidence. McCoy failed to show the district court abused it discretion.

McCoy argues the court erred in not taking notice of Gillette's PSI. The preparation, use, and disclosure of information in a presentence investigation report is governed by I.C.R. 32. Subject to the exception in paragraph (g), Rule 32 gives a criminal defendant a right of access to *his* report prior to sentencing. After sentencing, the report shall be sealed by court order and cannot be released to any individual without court authorization. I.C.R. 32(h). Following sentencing, a defendant does not have an automatic right to a copy of his own PSI report; rather, a defendant must demonstrate a genuine need for his report to obtain court authorization for its

6

release.  *State v. Adams*, 115 Idaho 724, 724-25, 769 P.2d 601, 601-02 (Ct. App. 1989).  McCoy was not entitled to have the court take judicial notice of Gillette's PSI.

McCoy also argues he should have received a hearing on his request for judicial notice. Idaho Rule of Evidence 201(e) states:  "A party is entitled *upon timely request* to an opportunity to be heard as to the propriety of taking judicial notice and the tenor of the matter noticed. . . ." (Emphasis added.)  McCoy's motion for judicial notice cited to I.R.E. 201(e), but at no time did he request a hearing.  As McCoy did not make a request to the district court for a hearing, the district court did not err.  Additionally, even if a hearing had been requested, McCoy has failed to show how a hearing could have changed the district court's decision, and unless a substantial right of the party is affected, the district court's decision will not be reversed.  I.R.E. 103(a).

## C.    Notice of Intent to Dismiss

McCoy argues he did not receive adequate notice that the district court would dismiss his application.   Pursuant to I.C. § 19-4906(b), the district court may sua sponte dismiss an applicant's post-conviction claims if the court provides the applicant with notice of its intent to do so, the ground or grounds upon which the claim is to be dismissed, and twenty days for the applicant to respond.   Pursuant to I.C. § 19-4906(c), if the State files and serves a properly supported motion to dismiss, further notice from the court is ordinarily unnecessary.  *Martinez v. State*, 126 Idaho 813, 817, 892 P.2d 488, 492 (Ct. App. 1995).  The reason that subsection (b), but not subsection (c), requires a twenty-day notice by the court of intent to dismiss is that, under subsection (c), the "motion itself serves as notice that summary dismissal is being sought." *Saykhamchone v. State,* 127 Idaho 319, 322, 900 P.2d 795, 798 (1995).  Idaho Rule of Civil Procedure 7(b)(1) requires that the grounds of a motion be stated with "particularity."  If the State's motion fails to give such notice of the grounds for dismissal, the court may grant summary dismissal only if the court first gives the applicant the requisite twenty-day notice of intent to dismiss, and the grounds therefore, pursuant to I.C. § 19-4906(b).  *Flores v. State*, 128 Idaho 476, 478, 915 P.2d 38, 40 (Ct. App. 1996).

Similarly, where "the state has filed a motion for summary disposition, but the court dismisses the application on grounds different from those asserted in the state's motion, it does so on its own initiative and the court must provide the twenty days notice."  *Saykhamchone,* 127 Idaho at 322, 900 P.2d at 798.  The notice procedure contained in I.C. § 19-4906 is necessary so that the applicant is afforded an opportunity to respond and to establish a material issue of fact if

one exists. *Flores,* 128 Idaho at 478, 915 P.2d at 40. If the district court dismisses on grounds not contained in the State's motion, the applicant has no opportunity to respond and attempt to establish a material issue of fact.

The Idaho Supreme Court recently addressed the notice required by I.C. § 19-4906(c) in *DeRushé v. State,* 146 Idaho 599, 200 P.3d 1148 (2009). The Court there noted that the notice requirement is met if "the notice is sufficient that the other party cannot assert surprise or prejudice" and the Idaho Rules of Civil Procedure require only "reasonable particularity." *Id.* at 601, 200 P.3d at 1150. The Court went on to conclude that reasonable particularity "does not require explaining what further evidence is necessary" to substantiate an applicant's claim. *Id.* at 602, 200 P.3d at 1151. The ultimate holding of the Court was that an applicant for post-conviction relief cannot challenge on appeal the sufficiency of the grounds contained in the State's motion for summary disposition unless the applicant first challenged the sufficiency of the notice in the trial court. *Id.* The *DeRushé* Court, however, reiterated that, "if the State moves to dismiss a petition under Idaho Code § 19-4906(c), the court cannot dismiss a claim on a ground not asserted by the State in its motion unless the court gives the twenty-day notice required by Section 19-4906(b)." *Id.*

The lack of proper notice does not necessarily require a remand to the post-conviction court. In *Ridgley v. State*, 148 Idaho 671, 674, 227 P.3d 925, 928 (2010), the district court provided notice of its intent to dismiss the application alleging ineffective assistance of counsel because there was insufficient showing of deficient performance and a lack of evidence that he was prejudiced. The district court, however, dismissed the application on a res judicata basis. The Court determined that Ridgley did not receive appropriate notice of the district court's intention to dismiss on a res judicata basis and stated:

> This conclusion does not automatically require reversal, however. Where the lower court reaches the correct result, albeit by reliance on an erroneous theory, this Court will affirm the order on the correct theory. *Boise Tower Assocs., LLC v. Hogland*, 147 Idaho 774, 782, 215 P.3d 494, 502 (2009) (citing *Nampa & Meridian Irr. Dist. v. Mussell*, 139 Idaho 28, 33, 72 P.3d 868, 873 (2003)). Because this Court employs the same standards on appellate review that the trial court applies in considering summary dismissal of a petition for post-conviction relief, if Ridgley failed to provide admissible evidence supporting these claims, they were properly dismissed.

8

*Id*. at 676, 227 P.3d at 930. The Court affirmed the district court holding on the basis that Ridgley failed to link his claim of deficient performance with his decision to plead guilty. *Id*. at 677, 227 P.3d at 931.

McCoy filed a document entitled "Defendants Motion for Leave to File a Successive Application for Post-Conviction Relief." McCoy argued he had sufficient reason, under I.C. § 19-4908, to file a successive application because he did not know and could not have known about the facts supporting his ineffective assistance of counsel claim. The State filed the "State's Assertion of Bar to Successive Post-Conviction Petition" contending that sufficient reason to file a successive application under I.C. § 19-4908 had not been shown and requesting dismissal or denial.

Perhaps the unorthodox nature of the pleadings in this matter has led the parties to misapprehend the ruling of the district court. However, the district court, consistent with the approach of both parties, treated the motion as a successive application and set forth, in its memorandum decision, the standards, including notice, for summary dismissal of a successive application. The district court specifically stated that "in his Successive Petition, McCoy claims that there are newly discovered grounds which present sufficient reason and evidence within in [sic] the record to warrant a successive petition." The district court stated that it had reviewed the entire record as well as the underlying criminal case record. While the district court indicated that the record did not support the ineffective assistance of counsel claim, the court specifically ruled that "Petitioner is not entitled to file a successive post-conviction petition and no purpose would be served by any further proceedings." Thus, the district court answered the threshold question of sufficient reason to file a successive application in the negative. Timely notice, through the State's pleading, was provided on that ground.

The State's pleading provided McCoy with notice that he needed to support his application with sufficient reason to proceed with a successive application or risk dismissal. McCoy was given sufficient opportunity to respond and to provide evidence to rebut this ground for dismissal. As discussed below, McCoy's application does not demonstrate sufficient reason. Even if the district court's decision was on a basis other than lack of sufficient reason to proceed with a successive application, this Court may affirm on that basis as provided in *Ridgley*.

**D.      Insufficient Reason for Filing a Successive Application**

The State argues that McCoy failed to show sufficient reason to file a successive application.  If an initial post-conviction action was timely filed and had been concluded, a subsequent application, outside of the one-year limitation period, may be filed if the court finds a ground for relief asserted which for sufficient reason was not asserted or was inadequately raised in the original, supplemental, or amended application.  I.C. § 19-4908.  *Charboneau v. State*, 144 Idaho 900, 904, 174 P.3d 870, 874 (2007).  Any ground for relief that was known or should have been known at the time of the first application is permanently waived.  *Stuart v. State*, 118 Idaho 932, 933-34, 801 P.2d 1283, 1284-85 (1990).  "Subsequent petitions are allowed if the appellant states a sufficient reason for not asserting the grounds in the earlier petition."  *Id.*

McCoy argues that sufficient reason is shown for a successive application by the newly discovered evidence.  McCoy must show that the evidence, by the exercise of due diligence, could not have been discovered in time to have been included in the initial post-conviction application.  As set forth above, the alleged newly discovered evidence was ostensibly provided to McCoy by Gillette in 2008.  We note, first, that the transcript of Gillette's Rule 35 hearing was never included in the record by affidavit or the request for judicial notice, and we will not consider it or argument based thereon.[2]  Further, no portion of Gillette's presentence investigation report was included in the record by affidavit and was not a proper subject of the request for judicial notice and, similarly, will not be considered.[3]  This leaves the supplemental report of Detective Schei, the affidavit of probable cause from Detective Hickman, McCoy's PSI, a letter from Gillette's original conflict counsel, Randall Schulthies, to Souza dated February 1994, and the letter from Souza to Bar Counsel dated April 15, 1994.

---

[2]      Moreover, the Idaho Supreme Court determined that nothing prevented McCoy from raising Souza's conflict of interest relative to McCoy's Rule 35 hearing.  Since the issue could and should have been raised, any evidence relative to the claim should also have been presented incident to the initial application.  What Souza may have said at Gillette's Rule 35 hearing, as it may have related to a conflict in Souza's representation of McCoy, could have been obtained by request for that transcript and presented at that time.

[3]      McCoy's assertion that Gillette's presentence investigation report shows Souza as counsel for Gillette as early as June 23, 1991 is immaterial.  Souza appeared for Gillette at sentencing on July 1, 1991 and for McCoy on July 2, 1991.  Our Supreme Court determined that no actual conflict existed and McCoy provides no argument as to how Souza's involvement with Gillette's sentencing, a week in advance, thereof affects that determination.

10

McCoy raised and litigated the issue of Souza's conflict of interest relative to sentencing in his first application for post-conviction relief. On appeal, the Supreme Court held that it would not entertain McCoy's claim of conflict of counsel relative to the Rule 35 hearings and the direct appeal because he had not raised the issues in his application stating, however, that "it is clear from the record that there is no reason McCoy could not have included these issues in his petition." *McCoy*, 129 Idaho at 73-74, 921 P.2d at 1197-98. McCoy does not claim that he could not have raised the conflict of interest issue relative to the Rule 35 hearing or on direct appeal. Instead, he claims the alleged newly discovered evidence would have further supported those claims. McCoy claims that the letter from Souza to Bar Counsel dated April 15, 1994, demonstrates that an associate in Souza's office, Naftz, prepared the Rule 35 pleadings and the appellate brief. From this letter he asserts ineffective assistance of counsel by Naftz and/or Souza, in failing to raise the conflict of interest issue in the Rule 35 context and on appeal.[4] This argument fails for several reasons. First, the letter is attached in the record to McCoy's request for judicial notice and is, thus, not properly submitted as evidence in the record. Second, even if considered, the letter only stated that the associate prepared "pleadings," which McCoy simply assumes included the Rule 35 pleadings and the appellate brief, which is not normally considered a "pleading." Third, no matter whether it was Naftz or Souza who did not raise the conflict of interest issue incident to the Rule 35 motion or on the appeal, the fact is it was not raised, but, as the Supreme Court determined, could have been raised as a basis for relief in the initial post-conviction application. Lastly, there is no reason identified as to why, had the issue been raised, post-conviction counsel could not have obtained the letter from either Souza's or Bar Counsel's files in support of the initial application and, thus, McCoy has failed to demonstrate that the letter could not have been timely discovered.

As to the letter from Gillette's original conflict counsel, Schulthies, to Souza dated February 1994, again, the letter is not properly presented in the record as evidence, but simply attached to the equitable estoppel document filed by McCoy. Even if we consider the letter, it simply stated Schulthies' displeasure that the Bar took action against Souza and that while "it may have appeared that there was a serious conflict," Souza's participation had no effect on the court's disposition of the matter. The letter has no evidentiary value to McCoy and, again,

---

[4]     The mere fact that McCoy claims that he did not know that Souza had an associate in his office prepare certain pleadings does not even arguably raise an ineffective assistance claim.

11

whether there was a conflict previously raised. In addition, had the issue of Souza's conflict at the Rule 35 hearing or on appeal been raised in the initial post-conviction application, there is no reason shown why this letter could not have been timely discovered from Souza's file.

The supplemental report of Detective Schei, the affidavit of probable cause from Detective Hickman, and McCoy's PSI were all in his criminal file. The Hickman affidavit and McCoy's PSI are specifically referenced in the prior appeal. *McCoy*, 129 Idaho at 74, 921 P.2d at 1198. McCoy's claim that he was unaware of these documents does not change the fact that they were available and previously considered. Had he raised the issue of Souza's conflict at the Rule 35 hearing or incident to the appeal, as he could have in the initial post-conviction application, these documents were readily available and cannot be demonstrated to be newly discovered evidence. The documents were determined by the Supreme Court to be inadequate to show an actual conflict of interest, even in light of the claim that McCoy was being painted as more culpable than Gillette. McCoy has not shown how that determination would be, in any way, different as to Souza's representation at the Rule 35 hearing or on appeal.

The evidence McCoy seeks to rely upon to show sufficient reason was, or should have been, known at the time of his initial application. There exists no reason why McCoy could not have raised the instant claims in the first post-conviction application. McCoy has not shown sufficient reason to be allowed to proceed with a successive post-conviction application.

## III.
## CONCLUSION

The district court did not err in failing to grant a default judgment against the State. The district court took judicial notice of the required documents, and committed no error in failing to take judicial notice of his counsel's disciplinary Bar file or his co-defendant's PSI. The State's response to McCoy's motion provided notice of its request for dismissal for failure to demonstrate sufficient reason to be allowed to proceed with a successive application for post-conviction relief. McCoy failed to demonstrate sufficient reason pursuant to I.C. § 19-4908. Therefore, the district court's summary dismissal of the successive application is affirmed. No costs or attorney fees on appeal.

Chief Judge LANSING and Judge GUTIERREZ, **CONCUR.**

12