992 P.2d 144

Randy Lynn McKINNEY,
Petitioner–Appellant,

v.

STATE of Idaho, Respondent.

No. 22750.

Supreme Court of Idaho,
Idaho Falls, May 1999 Term.

Dec. 13, 1999.

Radin & Webb, Idaho Falls; Joan M. Fisher, Moscow, for appellant. Joan M. Fisher argued.

Hon. Alan G. Lance, Attorney General, Boise, for respondent. L. LaMont Anderson, Deputy Attorney General, argued.

Previous Opinion Issued 10/4/99 is Withdrawn and This Opinion is Substituted Therefor.

KIDWELL, Justice.

Randy Lynn McKinney appeals from the district court's dismissal of his second amended petition for post-conviction relief in a capital case. We affirm.

## I.

### BACKGROUND AND PRIOR PROCEEDINGS

In November 1981, a jury found Randy Lynn McKinney guilty of first degree murder (both by premeditated killing and by felony murder), conspiracy to commit murder, robbery, and conspiracy to commit robbery for the April 1981 shooting death of Robert Bishop, Jr. McKinney's companion, Dovey Small, was convicted of the same offenses in a separate jury trial in February and March 1982.

On March 27, 1982, the district court sentenced McKinney to death for first degree murder. It also imposed the following sentences: indeterminate 30 years for conspiracy to commit murder, indeterminate thirty years for conspiracy to commit robbery, and

fixed life for robbery (enhanced with a consecutive term of 15 years for the use of a firearm). On direct appeal, this Court affirmed McKinney's convictions and death sentence. *State v. McKinney* (*McKinney I*), 107 Idaho 180, 182, 687 P.2d 570, 572 (1984).

McKinney filed his first petition for post-conviction relief on November 5, 1984, and an amended petition on March 14, 1985. McKinney conducted discovery which included interrogatories and requests for production of documents. After an evidentiary hearing, the district court denied relief in a decision dated August 24, 1987. On appeal, this Court affirmed. *McKinney v. State* (*McKinney II*), 115 Idaho 1125, 1128, 772 P.2d 1219, 1222 (1989).

After this Court issued *McKinney II*, McKinney applied for a stay of execution and began habeas corpus proceedings in federal district court on July 20, 1989. Because a change in federal law mandated that he raise and exhaust all state remedies before pursuing federal remedies, however, McKinney filed a second petition for post-conviction relief in state district court on November 21, 1990, after which his federal petition was dismissed. McKinney filed an amended petition on August 19, 1991.

Asserting that McKinney's second petition was barred by the operation of I.C. § 19–2719, the statute governing post-conviction procedures in capital cases, the State filed a motion to dismiss in January 1992. In June 1992, the district court denied the State's motion to dismiss on the basis of I.C. § 19–2719. However, it concluded that no genuine issues of material fact existed, and gave twenty-day notice of its intention to dismiss McKinney's petition pursuant to I.C. § 19–4906.

McKinney filed a reply to the district court's notice of intent to dismiss and presented several affidavits in support. On October 6, 1992, the district court granted McKinney's "Motion to Take Judicial Notice" and permitted limited discovery. Based on information gained during discovery, McKinney moved to file a Second Amended Petition in February 1994. The district court granted the motion on March 9, 1995.

In a memorandum decision and order of March 23, 1995, the district court concluded

that most of the claims asserted in McKinney's second amended petition either should have been known during the first post-conviction proceeding or were not asserted within a reasonable time, and so were barred by the operation of I.C. § 19–2719. However, the district court concluded that two claims, relating to nondisclosure of evidence by the prosecution and conflict of interest by appellate counsel, could not have been reasonably known until discovery in the current proceeding and were asserted within a reasonable time of discovery. On June 13, 1995, the district court ordered an evidentiary hearing on the two claims and summarily dismissed the other claims.

Because the State did not file an answer on the two remaining claims, McKinney moved for a default judgment on these claims. In response, the State moved to strike the motion to take default, and also moved for sanctions against McKinney for filing frivolous pleadings. After a combined hearing, the district court denied all three motions on September 14, 1995.

On September 15, 1995, McKinney abandoned his claim concerning appellate counsel's conflict of interest. In lieu of an evidentiary hearing, the parties submitted evidence by stipulation regarding the nondisclosure claim on November 22, 1995.

On January 2, 1996, the district court issued a memorandum decision and order. Pursuant to McKinney's abandonment, the district court denied relief on the claim concerning appellate counsel's conflict of interest. After reviewing the stipulated evidence concerning the State's failure to disclose exculpatory evidence, the district court concluded that all the facts presented reasonably should have been known by the time McKinney filed his first petition. Therefore, it concluded that I.C. § 19–2719 barred addressing the claims on the merits and dismissed McKinney's petition for post-conviction relief.

McKinney filed a notice of appeal on February 5, 1996.

## II.

### ISSUES ON APPEAL

As set forth in McKinney's brief, this Court addresses the following issues on appeal:

A. Whether the unreasonable delay in resolving the critical constitutional issues surrounding petitioner's death sentence, resulting in eighteen years of incarceration, seventeen of which have been in solitary confinement without reasonable rights of visitation or access to courts, is cruel and unusual punishment compelling vacation of petitioner's sentence.

B. Whether the district court erred in holding that deprivation or ineffective assistance of post-conviction counsel did not excuse the failure to raise the issues now raised in the initial petition.

C. Whether the trial court erred in denying petitioner's motion to take a default judgment.

D. Whether the district court erroneously concluded that I.C. § 19–2719 precluded correction of illegal non-death sentences for convictions for merged offenses of conspiracy to commit murder, conspiracy to commit robbery and robbery.

E. Whether the State's failure to disclose material exculpatory information concerning the co-defendant's propensity to violence, including her prior criminal history and psychological information, denied petitioner his right to a fair trial and due process under *Brady v. Maryland* and its progeny.

F. Whether the district court erred in limiting the scope of the evidentiary hearing to two specific allegations of prosecutorial misconduct.

G. Whether the petitioner was deprived of his right to an appeal and a meaningful review of the sentence of death as required by the Eighth and Fourteenth Amendments to the United States Constitution.

H. Whether the district court erred in its findings that petitioner's counsel on appeal was not ineffective.

## III.

### STANDARD OF REVIEW AND APPLICABLE LAW

#### A. Standard of Review.

Post-conviction proceedings are special proceedings, civil in nature. I.C.R.

57(b); *Pizzuto v. State (Pizzuto II)*, 127 Idaho 469, 470, 903 P.2d 58, 59 (1995). "To prevail, the petitioner must prove—by a preponderance of the evidence—the allegations on which application for relief is based." *Russell v. State*, 118 Idaho 65, 67, 794 P.2d 654, 656 (Ct.App.1990); I.C.R. 57(c). The Idaho Rules of Civil Procedure cover most procedural matters. I.C.R. 57(b); *Pizzuto II*, 127 Idaho at 470, 903 P.2d at 59. To justify a post-conviction evidentiary hearing, the petitioner must make a factual showing based on admissible evidence. The application must be supported by written statements from competent witnesses or other verifiable information. *Paradis v. State*, 110 Idaho 534, 536, 716 P.2d 1306, 1308 (1986) (quoting *Drapeau v. State*, 103 Idaho 612, 617, 651 P.2d 546, 551 (Ct.App.1982)). Unsubstantiated and conclusory allegations are insufficient to entitle a petitioner to an evidentiary hearing. *King v. State*, 114 Idaho 442, 446, 757 P.2d 705, 709 (Ct.App.1988).

■ Summary dismissal of a petition for post-conviction relief is the procedural equivalent of summary judgment under I.R.C.P. 56. *See Small v. State*, 132 Idaho 327, 330, 971 P.2d 1151, 1154 (Ct.App.1998). On review of a dismissal of a post-conviction relief application without an evidentiary hearing, this Court must determine whether a genuine issue of material fact exists based on the pleadings, depositions and admissions together with any affidavits on file. *Id.* at 331, 971 P.2d at 1155. Inferences are liberally construed in favor of the nonmoving party. *Id.*

■ Upon review of a district court's denial of a petition for post-conviction relief when an evidentiary hearing has occurred, this Court will not disturb the district court's factual findings unless they are clearly erroneous. I.R.C.P. 52(a); *Russell*, 118 Idaho at 67, 794 P.2d at 656. When reviewing mixed questions of law and fact, this Court defers to the district court's factual findings supported by substantial evidence, but freely reviews the application of the relevant law to those facts. *See Young v. State*, 115 Idaho 52, 54, 764 P.2d 129, 131 (Ct.App.1988). If a district court reaches the correct result by an erroneous theory, this Court will affirm the order upon the correct theory. *State v. Ave-*

*lar*, 129 Idaho 700, 704, 931 P.2d 1218, 1222 (1997).

**B. Applicable Law.**

Generally post-conviction proceedings are governed by the Uniform Post-Conviction Procedure Act (UPCPA), I.C. §§ 19–4901 to –4911. Post-conviction relief is available to persons convicted of crimes who claim, among other things, that their convictions or sentences violate the federal or state constitution, that material facts not previously presented require vacating them, or that they are otherwise subject to collateral attack under common law or statute. I.C. § 19–4901(a). Issues which should have been but were not raised on direct appeal are forfeited, "unless it appears to the court ... that the asserted basis for relief raises a substantial doubt about the reliability of the finding of guilt and could not, in the exercise of due diligence, have been presented earlier." I.C. § 19–4901(b).

In capital cases, the UPCPA is modified by I.C. § 19–2719, all relevant portions of which became effective on April 2, 1984. 1984 Idaho Sess. Laws ch. 159 § 7. I.C. § 19–2719 provides special procedures to eliminate "unnecessary delay in carrying out a valid death sentence." *Id.* I.C. § 19–2719 does not eliminate the applicability of the UPCPA to capital cases, but it supersedes the UPCPA to the extent that their provisions conflict. For capital cases, "[a]ny remedy available by post-conviction procedure, habeas corpus or any other provision of state law must be pursued according to the procedures set forth in this section and within the time limitations of subsection (3) of this section." I.C. § 19–2719(4).

A petitioner for post-conviction relief under I.C. § 19–2719 generally has one opportunity to raise all challenges to the conviction and sentence. I.C. § 19–2719(4)–(6). A defendant who fails to assert a claim within 42 days of the filing of the judgment imposing the death penalty is deemed to have waived any claims for relief that were known, or should have been known at that time. I.C. § 19–2719(3)–(5). Idaho courts have no power to consider waived claims. I.C. § 19–2719(5). In contrast, the UPCPA allows a

petitioner in a successive proceeding to assert claims "which for sufficient reason [were] not asserted or [were] inadequately raised in the original, supplemental, or amended application." I.C. § 19–4908.

■ In capital cases, a successive petition is allowed only where the petitioner can demonstrate that the issues raised were not known or could not reasonably have been known within the 42-day time frame. *State v. Rhoades*, 120 Idaho 795, 807, 820 P.2d 665, 677 (1991). This is in contrast with the UPCPA, which requires waiver to be knowing, voluntary, and intelligent. I.C. § 19–4908. Although the UPCPA requires all grounds for relief to be asserted in one proceeding, a court may allow a petitioner to file a subsequent claim if the claim was inadequately raised in the first petition, or the claim was not asserted "for sufficient reason." *Id.*

"I.C. § 19–2719 places a heightened burden on a petitioner which requires a prima facie showing by petitioner that the issues raised were not known and could not reasonably have been known within 42 days of judgment." *Paz v. State*, 123 Idaho 758, 760, 852 P.2d 1355, 1357 (1993). Even when the required prima facie showing is made, the issues must still be asserted "within a reasonable time" after they are known or reasonably could have been known. *Id.* A court must summarily dismiss any successive petition that does not meet the requirements of I.C. § 19–2719(5). I.C. § 19–2719(11).

This Court has strictly construed the waiver provision of I.C. § 19–2719. In *Paz*, where the petitioner was represented by the same attorney at trial, on direct appeal, and in the first post-conviction proceeding,[1] this Court held that the petitioner waived the issue of ineffective assistance of trial counsel by not raising it in his first petition. *Paz*, 123 Idaho at 760, 852 P.2d at 1357. Likewise, where a petitioner was represented by the same attorney at trial, on direct appeal, and in the first post-conviction petition, and the district court denied the defendant's request for the appointment of an independent

consulting attorney to review the record for claims of ineffective assistance, this Court concluded that the petitioner waived his ineffective assistance of counsel claim by not asserting it in the first petition. *Pizzuto II*, 127 Idaho at 472, 903 P.2d at 61. *See also Fetterly v. State*, 121 Idaho 417, 419, 825 P.2d 1073, 1075 (1991). We have failed to find waiver by the petitioner only where prior counsel failed to file any petition for post-conviction relief. *Dunlap v. State*, 131 Idaho 576, 577, 961 P.2d 1179, 1180 (1998).

Where this Court has concluded that an issue could *not* have been known within 42 days, it has required the petitioner to assert the issue soon after the issue is known. One petitioner's claims for ineffective assistance of appellate counsel were foreclosed when four years elapsed between filing the brief on direct appeal (which *followed* the first post-conviction proceeding) and asserting the claim of ineffective assistance in a second post-conviction proceeding. *Paz*, 123 Idaho at 760, 852 P.2d at 1357. In *Stuart v. State*, 118 Idaho 932, 934, 801 P.2d 1283, 1285 (1990), this Court upheld a second petition as timely when facts asserted in the second petition were not known until shortly before filing the successive petition. Recently, we held that filing of a petition for post-conviction relief 42 days after new counsel was appointed was a reasonable time for asserting a claim that could not have been known until the new counsel reviewed the files of the previous attorneys and discovered that no post-conviction action had been initiated. *Dunlap*, 131 Idaho at 577, 961 P.2d at 1180.

## IV.

## ANALYSIS

**A. The District Court Acted Correctly in Summarily Dismissing McKinney's Claim for Relief Predicated on Judicial Delay in Carrying Out the Sentence of Death.**

McKinney contends that the seventeen years he has spent in solitary confinement on

---

1. This factual situation is pointed out by Justice Bistline in his dissent. *Paz*, 123 Idaho at 761, 852 P.2d at 1358 (Bistline, J., dissenting).

death row because of judicial delay in his case constitutes cruel and unusual punishment, and therefore his death sentence should be vacated. The district court summarily dismissed this claim.

The State argues that this Court does not have jurisdiction to hear this claim because the issue was not presented to the district court. We disagree. McKinney's Second Amended Petition clearly raises this issue:

The failure of the trial court and the Idaho Supreme Court to exercise and fulfill its duties in regard to Petitioner's convictions and sentences ... have resulted in Petitioner's being under sentence of death and housed in solitary confinement for a period of nearly twelve years, ... which is a violation of the Petitioner's rights to be free of cruel and unusual punishment. . . .

█ As an alternative ground for dismissal, the State urges that consideration of this claim is barred by I.C. § 19-2719 because this issue is one that McKinney reasonably should have known when he filed his first petition for post-conviction relief. The State cites three federal cases for the proposition that unreasonable delay by the state in resolving a capital defendant's case is a claim that reasonably could have been known when the petitioner filed a first petition for post-conviction relief. *See Gretzler v. Stewart*, 146 F.3d 675, 676 (9th Cir.1998); *Bonin v. Calderon*, 77 F.3d 1155, 1160-61 (9th Cir. 1996); *Turner v. Jabe*, 58 F.3d 924, 930-31 (4th Cir.1995). The State's reliance on these cases is misplaced: in each, the petitioner had already been on death row over a decade when filing the first petition. *See id.* In contrast, McKinney had been on death row only three years when he filed his first petition for post-conviction relief in 1984. I.C. § 19-2719 does not require a petitioner to be prescient. When McKinney filed his first petition, he could not reasonably have antici-

pated the length of the legal process. The issue of the courts' alleged failure to expeditiously resolve his claims was not ripe until the delay became excessive.[2]

█ Although this Court has jurisdiction to hear this claim, we affirm the district court's summary dismissal of the claim. Death row prisoners are not entitled to have their sentences commuted to life because of the delay caused by their own unsuccessful collateral attacks on their sentences. *See Bonin*, 77 F.3d at 1161; *see also White v. Johnson*, 79 F.3d 432, 439-40 (5th Cir.1996) (reviewing other federal cases rejecting same argument). We also note that the U.S. Supreme Court has recently denied writs of certiorari in two cases raising the identical argument. *See Knight v. Florida*, — U.S. —, 120 S.Ct. 459, 145 L.Ed.2d 370 (1999); *Moore v. Nebraska, id.*

The reasoning of the Court of Appeals for the Ninth Circuit is persuasive:

A defendant must not be penalized for pursuing his constitutional rights, but he also should not be able to benefit from the ultimately unsuccessful pursuit of those rights. It would indeed be a mockery of justice if the delay incurred during the prosecution of claims that fail on the merits could itself accrue into a substantive claim to the very relief that had been sought and properly denied in the first place. If that were the law, death-row inmates would be able to avoid their sentences simply by delaying proceedings beyond some threshold amount of time, while other deathrow inmates—less successful in their attempts to delay—would be forced to face their sentences. Such differential treatment would be far more "arbitrary and unfair" and "cruel and unusual" than the current system. . . .

---

2. In oral argument, McKinney asserted that, under international precedent, any delay beyond five years could be considered excessive. McKinney filed his first amended petition in March 1985, was denied relief by the district court in June 1987, and was denied relief by the Idaho Supreme Court in March 1989. Any "unreasonable delay in resolving the critical constitutional issues" would have been ripe when this

Court issued *McKinney II*. However, McKinney failed to assert this claim until his second amended petition in March 1995. Issues that could not have reasonably been known within 42 days of judgment must be asserted in a reasonable time after they become known. *Paz*, 123 Idaho at 760, 852 P.2d at 1357. Although we resolve this issue on other grounds, we note that the six-year delay in asserting this claim is excessive. *See id.*

*McKenzie v. Day,* 57 F.3d 1493, 1494 (9th Cir.1995) (en banc).

Therefore, this Court affirms the district court's summary dismissal of this claim.

**B. Ineffective Assistance of Post–Conviction Counsel on McKinney's First Petition for Post–Conviction Relief Does Not Excuse McKinney's Failure to Raise Issues Which Should Have Been Raised in That Proceeding.**

■ Although conceding that ineffectiveness of post-conviction counsel is not an independent ground for a subsequent post-conviction proceeding, *Lee v. State,* 122 Idaho 196, 198, 832 P.2d 1131, 1133 (1992), McKinney contends that the ineffective assistance of counsel on his first petition for post-conviction relief excuses his failure to raise issues which should have been raised in that proceeding. He asserts that his first proceeding for post-conviction relief was governed under the UPCPA and its waiver provisions, which require that any waiver must be knowing, voluntary, and intelligent. I.C. § 19–4908. He contends that, because of the ineffectiveness of his first post-conviction counsel, he effectively had no first post-conviction proceeding, and he therefore must be allowed to plead and prove all claims which were and/or should have been presented in the first petition.

Under I.C. § 19–2719, a defendant who fails to assert a claim within 42 days of the filing of the judgment imposing the death penalty is deemed to have waived any claims for relief that were known, or reasonably should have known at that time. I.C. § 19–2719(3)–(5). A successive petition is allowed only where the petitioner can demonstrate that the issues raised were not known or could not reasonably have been known within the 42–day time frame. *Rhoades,* 120 Idaho at 807, 820 P.2d at 677. In contrast, the UPCPA allows a petitioner in a successive proceeding to assert claims "which for sufficient reason [were] not asserted or [were] inadequately raised in the original, supplemental, or amended application." I.C. § 19–4908. Under the UPCPA, a petitioner waives an issue only if the waiver is knowing, voluntary, and intelligent. *Id.*

■ The operation of I.C. § 19–2719 is not limited by the existence of previous proceedings using different procedural rules. The provisions of I.C. § 19–2719 apply "to *all* cases in which capital sentences were imposed on or prior to the effective date [April 2, 1984]." I.C. § 19–2719a. I.C. § 19–2719(4) requires that any habeas corpus or post-conviction remedies in capital cases must be pursued under the procedures set out in I.C. § 19–2719 and the 42–day time period of I.C. § 19–2719(3). The limitations of I.C. § 19–2719 apply to McKinney's second petition, and waiver of issues is governed by the "known[ ] or reasonably should have been known" waiver provision of I.C. § 19–2719(5) rather than the "knowing[ ], voluntar[y] and intelligent[ ]" waiver provisions of I.C. § 19–4908.[3] Thus, McKinney has waived all claims for relief that reasonably should have been known when he filed his first petition.

■ McKinney contends that if inadequate representation is an insufficient reason to permit a successive petition for post-conviction relief, then I.C. § 19–2719 effectively suspends the writ of habeas corpus in violation of Article I, § 5 of the Idaho Constitution. We reject this argument, affirming the Court of Appeals' analysis of this issue in *Eubank v. State,* 130 Idaho 861, 863–64, 949 P.2d 1068, 1070–71 (Ct.App.1997). All remedies in capital cases available by writ of habeas corpus or by post-conviction procedure must be pursued according to the procedures and the time limitations of I.C. § 19–2719. I.C. § 19–2719(4). The legislature may pass statutes regulating the use of the

---

**3.** Moreover, McKinney errs by asserting that I.C. § 19–2719 did not apply to his first post-conviction proceeding. It is true that not all of the provisions of I.C. § 19–2719, such as the I.C. § 19–2719(6) requirement that direct appeal and post-conviction challenge be raised in the same proceeding, could apply where McKinney had already pursued his direct appeal. However, to the extent that I.C. § 19–2719 could be applied, and to the extent that it superseded the UPCPA, it properly governed judicial resolution of McKinney's first petition, filed in November 1984.

writ of habeas corpus. *Mahaffey v. State,* 87 Idaho 228, 231, 392 P.2d 279, 280 (1964). Post-conviction procedure acts have replaced the writ of habeas corpus for the purpose of challenging the validity of a conviction. *See Dionne v. State,* 93 Idaho 235, 237, 459 P.2d 1017, 1019 (1969). The proper use of a petition for post-conviction relief "avoids repetitious and successive applications; eliminates confusion and yet protects the applicant's constitutional rights." *Id.* Like the UPCPA, I.C. § 19–2719 does not deny the writ of habeas corpus. *See id.; see also Eubank,* 130 Idaho at 863–64, 949 P.2d at 1070–71.

Because I.C. § 19–2719 applies to this petition, McKinney is restricted to bringing claims in his second petition for post-conviction relief that could not reasonably have been known at the time of the first petition. I.C. § 19–2719(5). Ineffective assistance of counsel in McKinney's first post-conviction proceeding does not excuse his failure to raise issues that should reasonably have been known. Therefore, we affirm the district court's summary dismissal of this issue.

**C. The District Court Did Not Abuse Its Discretion in Denying McKinney's Motion for a Default Judgment on Claims Alleging Prosecutorial Misconduct and Appellate Counsel's Conflict of Interest.**

When McKinney filed his second amended petition in March 1995, the State did not file an answer to the petition. On June 13, 1995, the district court ordered an evidentiary hearing on the claims in McKinney's second amended petition alleging prosecutorial misconduct and appellate counsel's conflict of interest. Because the State did not file an answer on the two remaining claims, McKinney moved for a default judgment. In response, the State moved to strike the motion to take default, and also moved for sanctions against McKinney for filing frivolous pleadings. After a combined hearing, the district court denied all three motions on September 14, 1995. McKinney contends that he was entitled to a default judgment on these two claims because the State failed to file an answer.

In proceedings for post-conviction relief, the Idaho Rules of Civil Procedure apply. I.C.R. 57(b); *Pizzuto II,* 127 Idaho at 470, 903 P.2d at 59. Power to enter a default judgment is governed by I.R.C.P. 55. *Johnson v. State,* 112 Idaho 1112, 1114, 739 P.2d 411, 413 (1987) (per curiam). The grant or denial of an application for the entry of default judgment in a post-conviction proceeding rests within the discretion of the district court. *Id.* In determining whether the district court has abused its discretion, this Court asks (1) whether the trial court correctly perceived the issue as one of discretion; (2) whether the trial court acted within the outer boundaries of its discretion and consistent with the legal standards applicable to the specific choices available to it; and (3) whether the trial court reached its decision by an exercise of reason. *Sun Valley Shopping Ctr. v. Idaho Power Co.,* 119 Idaho 87, 94, 803 P.2d 993, 1000 (1991). In exercising its discretion, the district court may consider factors such as the reasons for the failure to respond, the adequacy of notice, whether the non-defaulting party has been substantially prejudiced by the delay, and the merits of the underlying claim for relief. *Johnson,* 112 Idaho at 1114, 739 P.2d at 413.

The standard of review is dispositive. Citing *Johnson,* the district court discussed the factors it could consider in exercising its discretion. It determined that notice was not a problem and that McKinney was not substantially prejudiced by the delay caused by the State's failure to answer. In addition, the merits of McKinney's claims regarding prosecutorial misconduct and appellate counsel's conflict of interest were unclear. Moreover, the district court concluded that the State's responsive motions for sanctions made it clear that the State issued a general denial. Weighing these factors, the district court denied a default judgment. We hold that the district court did not abuse its discretion in denying McKinney's motion to take a default judgment.

**D. McKinney's Challenge to his Non-Death Sentences Is Untimely Under I.C. § 19–4902.**

The district court summarily dismissed, as waived under I.C. § 19–2719, McKinney's

claims asserting that his convictions for robbery, conspiracy to commit murder, conspiracy to commit robbery, and the sentence enhancement for use of a firearm were illegal sentences. McKinney contends that I.C. § 19–2719 applies only to capital proceedings. He asserts that there was no jury fact-finding concerning the sentence enhancement for use of a firearm. In addition, he contends that his two conspiracy convictions and robbery conviction were all lesser included offenses of the first degree murder conviction.

 Here McKinney challenges not his death sentence, but two sentences for conspiracy and one for robbery. Challenges to a death sentence and challenges to non-death sentences may be brought together in one action. *See generally State v. Pizzuto* (*Pizzuto I*), 119 Idaho 742, 756–759, 810 P.2d 680, 694–97 (1991), *overruled on other grounds by State v. Card,* 121 Idaho 425, 432, 825 P.2d 1081, 1088 (1991). However, by its terms, I.C. § 19–2719 applies solely to death sentences.[4] Therefore, the waiver provisions of I.C. § 19–2719(5) apply only to claims challenging the death sentence itself, not to all claims brought in conjunction with death sentences. *Cf. State v. Beam,* 121 Idaho 862, 864, 828 P.2d 891, 893 (1992) (noting that I.C.R. 35 applies to criminal sentences in general, but is superseded in death sentences by I.C. § 19–2719). The provisions of the UPCPA govern all post-conviction claims that do not involve the death sentence. I.C. § 19–4901(a). It should be noted, however, that the legislature instituted the procedures of I.C. § 19–2719 "to accomplish the purpose of eliminating unnecessary delay in carrying out a valid death sentence." I.C. § 19–2719. If necessary to avoid delay and accomplish the legislative purpose, a district court may sever non-death issues from death issues in post-conviction proceedings.

 McKinney first asserted claims concerning non-death sentences in the amended petition of August 19, 1991. At that time, the UPCPA provided a five-year period within which post-conviction proceedings could be brought:

> An application [for post-conviction relief] may be filed at any time within five (5) years from the expiration of the time for appeal or from the determination of an appeal or from the determination of a proceeding following an appeal, whichever is later.

I.C. § 19–4902 (1987). A "proceeding following an appeal" applies only to disposition of the direct appeal, not to separate post-conviction proceedings. *See Freeman v. State,* 122 Idaho 627, 629, 836 P.2d 1088, 1090 (Ct.App. 1992); *Hanks v. State,* 121 Idaho 153, 154, 823 P.2d 187, 188 (Ct.App.1992); *see also Atkinson v. State,* 131 Idaho 222, 224, 953 P.2d 662, 664 (Ct.App.1998) (holding that period for filing application for post-conviction relief under UPCPA begins to run when a petition for certiorari with U.S. Supreme Court is denied).

This Court issued its decision in McKinney's direct appeal on July 26, 1984. No remand was made to the district court, and McKinney did not apply for a writ of certiorari to the U.S. Supreme Court. Therefore, the limitation period for filing a claim under the UPCPA was five years after the direct appeal was decided, or July 26, 1989. *See, e.g., Atkinson,* 131 Idaho at 223, 953 P.2d at 663; *Bell v. State,* 128 Idaho 62, 63, 910 P.2d 176, 177 (Ct.App.1996). Because McKinney's non-death claims were not brought within the statutory period for UPCPA claims, we will not consider them in this proceeding.

**E. The Claim That the State Failed to Disclose Exculpatory Information Is Waived.**

Discovery granted in the second post-conviction proceeding revealed ten items, not revealed by the prosecution when McKinney made his pretrial discovery requests, that were potentially exculpatory and/or mitigating evidence for McKinney:

(1) A phone message suggesting that Small admitted shooting Bishop.

---

4. *E.g.,* "Within forty-two (42) days of the filing of *the judgment imposing the punishment of death,* ... the defendant must file any legal or factual challenge to *the sentence or conviction* ...." I.C. § 19-2719(3) (emphasis added).

(2) A statement by Lacey Small suggesting that Casey Wheeless was paid off for his testimony.

(3) A letter from an inmate suggesting that he had information about Casey Wheeless and the victim's father.

(4) Birdie Peabody's testimony at Small's trial that she overheard Small threaten to kill someone.

(5) Robert Anderson's testimony at Small's trial that impeached Cathy Mangum's testimony at McKinney's trial.

(6) Possession and analysis of drugs seized from McKinney, which tended to corroborate a defense of impairment.

(7) Statements by Small supporting a jealousy motivation for McKinney's actions.

(8) An incident report that contradicted information in McKinney's PSI.

(9) A notation that county jail officials had placed McKinney on suicide watch.

(10) Information on Small's propensity to violence from her trial and PSI.

In its March 1995 Memorandum Decision, the district court found that McKinney had not actually raised the nondisclosure issue previously, and concluded that the nondisclosure was not reasonably knowable in previous proceedings. The State and McKinney submitted evidence by stipulation in lieu of an evidentiary hearing on this issue. In January 1996, the district court reversed its ruling after it reviewed the stipulated evidence. It concluded that all the facts presented should have been known by the time McKinney filed his first petition, and thus were procedurally barred by I.C. § 19–2719.

McKinney asserts that the cumulative impact of the ten items above is such that the result of his trial and his sentencing would have been different if these items had been available. In particular, he contends that these items cast doubt on the finding that McKinney shot Bishop four times through the head and shows Small to be the more culpable party. He contends that the prosecution's failure to disclose this exculpatory information denied his right to a fair trial and due process of law.

The due process guarantees of the Fifth and Fourteenth Amendments to the United States Constitution mandate that the prosecution disclose exculpatory evidence in the government's possession to an accused person. *Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 1196–97, 10 L.Ed.2d 215, 218 (1963); *State v. Dopp*, 129 Idaho 597, 605, 930 P.2d 1039, 1047 (Ct.App.1996); *State v. Owens*, 101 Idaho 632, 638, 619 P.2d 787, 793 (1979). The duty to disclose is irrespective of good or bad faith on the prosecution's part. *Brady*, 373 U.S. at 87, 83 S.Ct. at 1196–97, 10 L.Ed.2d at 218.

The defendant's right to due process is violated where the prosecution fails to disclose exculpatory evidence that is material either to guilt or punishment. *Dopp*, 129 Idaho at 606, 930 P.2d at 1048; *California v. Trombetta*, 467 U.S. 479, 485, 104 S.Ct. 2528, 2532, 81 L.Ed.2d 413, 419–20 (1984). Evidence is material for purposes of due process analysis "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley*, 473 U.S. 667, 682, 105 S.Ct. 3375, 3383, 87 L.Ed.2d 481, 494 (1985); *see also Dopp*, 129 Idaho at 606, 930 P.2d at 1048. The prosecution does not violate the constitutional duty of disclosure unless the nondisclosure "is of sufficient significance to result in the denial of the defendant's right to a fair trial." *Schwartzmiller v. State*, 108 Idaho 329, 333, 699 P.2d 429, 433 (Ct.App.1985) (quoting *United States v. Agurs*, 427 U.S. 97, 108, 96 S.Ct. 2392, 2400, 49 L.Ed.2d 342, 352 (1976)); *see also Strickler v. Greene*, 527 U.S. 263, 290, 119 S.Ct. 1936, 1952, 144 L.Ed.2d 286, 306 (1999) (quoting *Kyles v. Whitley*, 514 U.S. 419, 435, 115 S.Ct. 1555, 1566, 131 L.Ed.2d 490, 506 (1995)) ("[T]he question is whether 'the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict.'"). Whether evidence is material for purposes of due process analysis is a question of law, over which this Court exercises free review. *Dopp*, 129 Idaho at 606, 930 P.2d at 1048.

Even if the State violated McKinney's right to due process by withholding evidence,

McKinney was required to raise this issue, like other constitutional issues, within the time frame mandated by I.C. § 19–2719. Thus we examine the individual items to determine if they reasonably should have been known at the time of McKinney's first petition for post-conviction relief.

■ Items (4) (Peabody's testimony), (5) (Anderson's testimony), and (10) (information on Small's propensity to violence) were all offered at Small's trial in February and March of 1982. Like the State's inconsistent positions at the separate trials, this information was reasonably knowable by the time McKinney filed his initial petition in 1984.

At sentencing, the district court used, as an aggravating circumstance, information in McKinney's PSI indicating that an incident in Bullhead, Arizona showed McKinney's propensity to violence. The incident report of item (8) tended to show that McKinney was not a perpetrator of the incident. McKinney raised the issue of the PSI's inaccuracy concerning this issue in his first petition, and this Court held that this exculpatory material would provide no cause to vacate or alter McKinney's sentence. *McKinney II*, 115 Idaho at 1128, 772 P.2d at 1222.

Item (6), the State's possession of drugs seized from McKinney, is a matter that should reasonably have been known to McKinney since the drugs were seized from him.

■ Items (1), (2), (3), (7), and (9) were obtained during discovery in the second post-conviction proceeding. Although these documents were not actually known until discovery in the second proceeding, McKinney did not make the required prima facie showing that the issues could not reasonably have been known during the first proceeding. *See Paz*, 123 Idaho at 760, 852 P.2d at 1357.

We hold that McKinney waived claims involving non-disclosure of these items by not asserting them in the first petition for post-conviction relief. Therefore, we affirm the district court's dismissal of this claim.

**F. Summary Dismissal of McKinney's Remaining Claims Was Proper Because They Were Raised on Direct Appeal, Raised in McKinney's First Petition for Post-Conviction Relief, or Waived by Not Being Asserted in McKinney's First Petition for Post-Conviction Relief.**

McKinney asserts that the district court improperly denied an evidentiary hearing on a number of other issues raised in his second amended petition for post-conviction relief. He contends that summary judgment on these issues was improper.

■ Any claims that McKinney actually asserted on direct appeal are barred as *res judicata*. *See Stuart v. State*, 118 Idaho 865, 867, 801 P.2d 1216, 1218 (1990). As noted above, I.C. § 19–2719, with its strict waiver provisions, applies to this petition. Any claims that McKinney asserted in his first petition, whether or not they were appealed, and any claims that McKinney reasonably should have known in 1984 when he filed his first petition for post-conviction relief are barred by operation of I.C. § 19–2719(3)–(5). Because I.C. § 19–2719 did not apply to McKinney's direct appeal, but did apply to his first petition for post-conviction relief, we examine McKinney's claims to see whether they reasonably should have been known at the time that McKinney filed his first petition for post-conviction relief in 1984.

■ The following claims are *res judicata* because McKinney actually raised them on direct appeal:

Denial of the right to confrontation of witness Small.

Inflammatory and prejudicial argument by prosecutor.

Improper weighing of aggravating and mitigating circumstances.

The following claims are barred because McKinney actually raised them in his first petition for post-conviction relief:

McKinney's inability to assist in his own defense.

Sentencing by judge instead of jury as an unconstitutional death penalty procedure.

Equal protection right to jury factfinding and sentencing in death penalty case.

Doubling of elements of murder with aggravating factors for sentencing.

Sentencing court's alleged rejection of mitigating factors.

Sentencing court's alleged failure to consider alternatives to death penalty.

Idaho Supreme Court's alleged failure to apply proportionality review.

Ineffective assistance of trial counsel.

Ineffective assistance of appellate counsel on direct appeal.

■ McKinney has waived the following issues under I.C. § 19–2719 because he either actually knew them, or reasonably should have known them, at the time he filed his first petition for post-conviction relief:

Use of information from Small's attorney during sentencing.

The State's inconsistent positions at the separate trials of McKinney and his co-defendant Small.

Defective reasonable doubt instruction.

Defective jury verdicts.

Failure to instruct on lesser included offense.

Admission of testimony regarding prior unsubstantiated murder.

Financial responsibility of counties, rather than state, for paying for prosecution and defense as resulting in arbitrary and capricious application of the death penalty.

Death row conditions as cruel and unusual punishment.

Systemic disparity in resources between State and defense.

Use of constitutionally protected behavior as an aggravating factor.

Denial of mental health expert.

Denial of right to confrontation because sentencing judge heard co-defendant Small's trial.

Sentencing court's reliance on McKinney's statements to Small's attorney acting as state agent.

Sentencing court's consideration of McKinney's unwarned statements to PSI investigator.

For each of the issues above, the district court properly concluded that the claim was either *res judicata* or that McKinney had waived an issue which was known or reasonably should have been known at the time of his first post-conviction proceeding. Therefore, we affirm its summary dismissal of these claims.

### G. This Court Declines to Reach the Remaining Issues Because They Are Procedurally Barred.

■ In reviewing a capital case, the Idaho Supreme Court must consider, in addition to enumerated errors, "whether the sentence of death was imposed under the influence of passion, prejudice, or any other arbitrary factor." I.C. § 19–2827(c)(1). McKinney charges that this Court failed to do this on direct appeal. In his reply brief, McKinney also charges that this Court incorrectly defined mitigation in *McKinney II*, and this deprived McKinney of his right to a meaningful review of his sentence. Neither of these issues is raised in McKinney's second amended petition.[5] Because these issues were not raised before the district court, this Court will not consider them on appeal. *McCoy v. State*, 129 Idaho 70, 75, 921 P.2d 1194, 1199 (1996).

McKinney also asserts that the district court erred in finding that McKinney's counsel on direct appeal was not ineffective in its Memorandum Decision and Order of June 25, 1992.

In its June 1992 Memorandum Decision and Order, the district court scrutinized the claims made in McKinney's amended petition of August 21, 1991. In the course of discussing the merits of each of McKinney's claims, the district court determined that McKinney's appellate counsel was not ineffective. However, concluding that all of the claims in the amended petition were either raised on direct appeal, in the first petition for post-

---

5. In his petition, McKinney contended that he was deprived of his right to an appeal and meaningful review of his death sentence by this

Court's failure to conduct a sufficient proportionality review mandated by I.C. § 19–2827(c)(3), a separate issue he does not raise on appeal.

conviction relief, or should reasonably have been known when McKinney filed his first petition, the district court proposed to dismiss all claims. Thereafter, McKinney filed a Second Amended Petition in which he supplemented substantive issues of ineffective assistance of appellate counsel with an assertion that appellate counsel had a conflict of interest. In March 1995, the district court ordered an evidentiary hearing on the conflict of interest issue. After counsel advised the district court that McKinney would abandon the conflict of interest claim, the district court dismissed the claim on January 2, 1996.

■ An issue is moot when it is "no longer live or the parties lack a legally cognizable interest in the outcome." *Bradshaw v. State*, 120 Idaho 429, 432, 816 P.2d 986, 989 (1991) (quoting *Murphy v. Hunt*, 455 U.S. 478, 481, 102 S.Ct. 1181, 1183, 71 L.Ed.2d 353, 357 (1982)). Here, even though the district court discussed the merits of the claim, it correctly concluded that McKinney could not assert a claim for ineffective assistance of appellate counsel in a second post-conviction proceeding. McKinney raised the issue of ineffective assistance of appellate counsel in his first post-conviction proceeding, so the issue was *res judicata*. Therefore, the issue of appellate counsel's effectiveness is moot, and this Court will not consider it on appeal.

## VI.

## CONCLUSION

For the reasons and analysis presented above, this Court affirms the district court's order dismissing McKinney's petition for post-conviction relief.

Chief Justice TROUT, Justices SILAK, SCHROEDER, and WALTERS concur.